# <u>Summary of My Case</u>

**Background Information:**

My name is Theodora Antar, I am a 33 year old mom of 2 girls, Angelina Lodice (5/21/2019) and Julianna Viglione (9/23/2014).

I am a notary public and notary loan signing agent for the State of Connecticut since 2019.

I have been a business owner since 2020 and have a bachelors in Political Science from Southern Connecticut State University.

I am a JD Candidate at the University of Connecticut School of Law and completed almost 2 years so far of my JD.

I own my own home in Orange, Connecticut.

As a child, I was subjected to severe sexual, emotional, physical, and psychological abuse at the hands of my family. I was then further victimized by the state by their negligence and reckless methods of handling my case.

In 2006, I went to the Connecticut State Police to report that my older half-brother, who was 9 years older than me, had sexually abused me from the ages of 4-9 as a child. In 2007, he was arrested and in 2009 he plead guilty. The sentencing transcript is below:

NNH-CR070075571T
_____

| | | |
|---|---|---|
| STATE OF CONNECTICUT | : | SUPERIOR COURT |
| | : | G.A. 23 |
| | | OF NEW HAVEN |
| - VS - | | |
| CHRISTOPHER KATAGIS | : | AT NEW HAVEN |
| | : | JUNE 4, 2009 |

_____


BEFORE THE HONORABLE: RICHARD DAMIANI, JUDGE


A P P E A R A N C E S


FOR THE STATE

JOHN WADDOCK, ESQ


FOR THE DEFENDANT
DIANE POLAN, ESQ


James Barraford
Court Recording Monitor

1

<pre>
 1                      The Court remarks

 2

 3          THE COURT: On the charge of Risk of Injury,

 4      sir, you are committed to the custody and care of

 5      the Commissioner of Corrections for a period of

 6      five years, that's suspended, you are placed on

 7      probation for five years. On the Sex 4, it's one

 8      year suspended, three years of probation, that's

 9      to run concurrent. Total effective sentence is

10      five years suspended and five years probation.

11          THE CLERK: There was an Unlawful Restraining

12      —

13          MR. WADDOCK: -- Unlawful Restraining in the

14      1ˢᵗ, as well.

15          THE COURT: I'm sorry. It will be five

16      suspended and five probations, also, all to run

17      concurrent. There's not much I can say about

18      this, this case was around for quite some time.

19      We discussed it at great length. My major concern

20      in this matter was really not you; it was really

21      the young girl, the alleged victim in this

22      matter. The dynamics of your family came into

23      play. I knew you were going back into the house

24      when the young girl left the house. That was done

25      so that you could work and support the family

26      rather than see the house go into foreclosure.

27          And really, for some time until Miss Baron
</pre>

2

```
1          got involved and really pushed DCF, the young
2          girl was not only victimized once with you, but
3          she was again being victimized by our system. And
4          I think that everyone did work very hard, I mean,
5          I was just a conduit more or less. It was Miss
6          Polan, Mr. Waddock, Miss Baron worked very hard
7          to resolve it, and really, somehow to enumerate
8          the traumatic impact on the young girl. And I'm
9          glad she's graduating from high school and I hope
10         she goes on to college. But she has quite a load
11         to haul around with her now.
12             In any event, conditions of your probation
13         are as outlined in the addendum to the Pre-
14         Sentence Investigation. One, you are to have
15         individual psychotherapy with a licensed
16         therapist. A copy of the report submitted by
17         Catherine Saveno, reviewed by Dave DeMoore, will
18         be given to the therapist. And I would suggest
19         that within 30 days that you end up engaging in
20         that type of treatment, the name be given to
21         Probation, and Probation will give a copy of this
22         report to that therapist.
23             Mr. DeMoore does say that you do not appear
24         to be an appropriate candidate for adult sex
25         offender treatment, so that is not being ordered.
26         Sex offender treatment will not serve your needs
27         adequately at this time.
```

4

3

```
 1              You are also to comply with any referrals

 2         for additional services as deemed necessary by

 3         your therapist. You are to initiate no contact

 4         with the victim. Now, the conclusion in the Pre-

 5         Sentence Investigation regarding initiate no

 6         contact with the victim states if the victim

 7         desires contact. Now that is not in complete

 8         compliance with what Mr. DeMoore recommends or

 9         Miss Saveno – they are saying no contact unless

10         initiated by the victim. And if contact is

11         desired, both the victim's treatment provider and

12         Mr. Katagis' treatment provider must be in

13         agreement that the contact is suitable. Do you

14         want that as a condition?

15              MISS POLAN: Well, Your Honor, I wanted to

16         say something about that. Because I understand

17         the part of it that he's not to initiate any

18         contact. But I think the problem here is even if

19         the victim wants contact, he may not. And I don't

20         think that we should set up a situation where he

21         could violate his probation by not wanting

22         contact. That's what I'm concerned about.

23              THE COURT: Oh, he, he, he doesn't have to

24         have contact –

25              MISS POLAN: -- the way -- right, that's just

26         why I was concerned about the phrasing.

27              THE COURT: No.
```

4

1          **MISS POLAN:** I think that it needs to be
2      phrased so it's clear that he's not under an
3      obligation to have any contact. I understand why
4      this is in here, to allow it if both parties want
5      it.
6          **THE COURT:** Well, I think –
7          **MISS POLAN:** -- and if the treater, and if
8      the treater – but I just want the Court to make
9      clear that its not required of him.
10          **THE COURT:** Right. But I think its there – so
11      it's clear is that -- let's just say there's a
12      family function that everyone is going to attend
13      –
14          **MISS POLAN:** -- okay –
15          **THE COURT:** -- and the young girl wants to
16      attend –
17          **MISS POLAN:** -- mhmm –
18          **THE COURT:** – and her therapist said it's
19      okay to go there, she can attend the function.
20      What that means is that your client does not have
21      to leave the function –
22          **MISS POLAN:** -- mhmm –
23          **THE COURT:** -- he does not have to go up to
24      her and talk to her or be nice to her. He can
25      avoid her if he wants –
26          **MISS POLAN:** -- mhmm –
27          **THE COURT:** -- but it will not stop her from

5

```
1          attending, usually when you say that, no contact
2          with the alleged victim, that means that if she
3          walks into the room, he's got to walk out of the
4          room. There's no obligation on his part, if she
5          wants to attend a family function where he is
6          present now, he can remain.
7              MISS POLAN: Okay.
8              THE COURT: If he wants to talk to her, fine.
9          If he doesn't want to talk to her, that's fine
10         too. He has no obligation --
11             MISS POLAN: -- okay, that's what I wanted to
12         clarify --
13             THE COURT: -- to have any contact with the
14         young lady even thought she attends that
15         function. So I'm going to put in then that the no
16         contact with the victim unless initiated by the
17         victim. If initiated by the victim, the defendant
18         still does not have to have contact. If contact
19         is desired by the victim, both the victim's
20         treatment provider and the defendants treatment
21         provider must be in agreement that the contact is
22         suitable. And the victim would be allowed to
23         determine the frequency and type of contact. Now
24         that would mean that if in fact she wanted to
25         talk to your client and the treatment providers
26         say it's okay, your client could say I don't want
27         to talk to her, that ends it.
```

6

1              **MISS POLAN:** Okay.

2              **THE COURT:** If he says that he wants to talk

3         to her, then she decides the frequency and the

4         type of contact. But it's a two-way street, it's

5         not a one-way street.

6              **MISS POLAN:** But it does have to be initiated

7         through her treatment provider?

8              **THE COURT:** Right.

9              **MISS POLAN:** That's fine.

10              **THE COURT:** Well, if she wants to initiate it

11         and it's got to be agreed upon by both treatment

12         providers.

13              **MISS POLAN:** Right.

14

15

16

17

18

19

20

21

22

1

```
                              : SUPERIOR COURT
STATE OF CONNECTICUT      : G.A. 23
        VS.               : AT NEW HAVEN
CHRISTOPHER KATAGIS       : JUNE 4, 2009
```

<u>CERTIFICATION</u>

I hereby certify that the following is a true and accurate transcript of the above-entitled case as heard and recorded in the Superior Court, Geographical Area 23 of New Haven, New Haven, Connecticut before the Honorable Judge RICHARD DAMIANI.

This certificate does not apply to photocopies which do not contain my original signature.

Signed and dated this 9th day of June, 2009

*James Barraford*
_____
James Barraford
Court Recording Monitor
                              6/9/23 jab



The link to the audio of this hearing is below:

State of Connecticut v Christopher Katagis Sentencing Hearing

https://youtu.be/3QppQFfr5fs

Eventually, I graduated high school in 2009 and started college at the University of New Haven in August of 2009 as a double major in legal studies and criminal justice with a pre-law minor. I was actively pursuing my lifelong dream of becoming a successful attorney.

After my first year at the University of New Haven, I transferred to Gateway Community College in New Haven, Connecticut after being unable to get enough in student loans to cover the cost of tuition and housing at UNH.

After taking several semesters of community college courses between Gateway Community College and Daytona State College in Daytona Beach, Florida, I decided to take a semester off to work and financially support myself. I worked as a waitress and a nanny, averaging between 60-80 hours a week and was able to support myself financially.

I ended up working all throughout college as a nanny and waitress, and was a full time student and a full time employee for the majority of the time I was in college. I still was able to achieve being listed on the Dean's list for virtually every semester in college. I excelled in school and always felt that I was not being challenged enough.

By the time I was a senior in college, I had transferred to Southern Connecticut State University in New Haven, Connecticut, where I majored in

political science. During my senior year of college, I unexpectedly became pregnant at the age of 22 with a man who I had only known for six months. He asked me to get an abortion and told me that "we wouldn't even have to tell anyone" and that we could just "quietly get rid of it."

As a Greek Orthodox Christian, I believed that having my child was the only solution at the time, in spite of how hard it would be. I was scheduled to graduate with my bachelors degree that year in December, but my due date was in October. I knew that if I dropped out of school, I would never go back.

Even though I had no support from my family, no stability, no money, and was a struggling college student who wanted to do another 4+ years of school immediately upon the completion of my bachelors, I decided to rearrange my entire life to embrace motherhood.

I signed up for a full load of courses that summer, and did an independent study to cover all of the credits that I needed so that I could graduate in August instead of in December. In August of 2014 I graduated from Southern Connecticut State University at 9 months pregnant with my BA in Political Science with a 3.78 cumulative GPA and a 4.0 GPA in my final semester which I did while heavily pregnant and dealing with an emotionally and physically abusive partner at the time.

Julianna was born one month later in September, and I became 100% a stay at home mother taking care of her full time.

By the time that Julianna was three months old, her father's dad threw her and I out on the street in the middle of December because he was angry that her father and I had an argument while at his house, where we all lived.

I went from living in his dads house to being thrown out with an infant, to going to different apartments until finally in 2016 I decided to finally leave Julianna's father. He was physically abusive to me before, during, and after my pregnancy with Julianna, but I only stayed with him because I needed him financially to support me in order to survive. I had no money or means to survive on my own with a baby.

 After an incident where he strangled and threatened to kill me in front of Julianna who was around 16 months old at the time, I finally called the police and he was arrested and a restraining order was issued. I was granted sole custody of Julianna since 2016 and was awarded sole legal and sole physical custody of her in New Haven Superior Court which I maintained from 2016 until 2024.

I also held sole religious decision making for Julianna and she only saw her father Gerald Viglione for every weekend from Fridays at 6:00PM to Sunday at 6:00PM every weekend. Gerald's visits were modified to every other weekend in 2022.

Julianna's father, Gerald Viglione, was arrested in 2016 and charged with strangulation, assault, and several other charges. He was convicted of assault and later convicted of felony violation of protective order.

Defendant Information

**Last, First:** VIGLIONE GERALD J                              **Represented By**
**Birth Year:** 1986                                           **Times on the Do**

Docket Information

| | | | |
|---|---|---|---|
| **Docket No:** | N23N-CR16-0166495-S | **Arresting Agency:** | LOCAL P |
| **Companion:** | | | |
| **Program:** | | **Arrest Date:** | 4/25/201 |
| **Court:** | New Haven GA 23 | **Bond Amount:** | $10,000 |
| | | **Bond Type:** | Professic |
| **Miscellaneous:** | | | (Release |

| | | Next Court Date: | 5/31/2016 10:00 AM |
|---|---|---|---|
| ctivity: | Awaiting Plea | | |

## urrent Charges

| tatute | Description | Class | Type | Occ |
|---|---|---|---|---|
| 3a-62 | THREATENING 2ND DEG | A | Misdemeanor | 1 |
| 3a-182 | DISORDERLY CONDUCT | C | Misdemeanor | 1 |
| 3a-64cc | STRANGULATION THIRD DEGREE | A | Misdemeanor | 1 |
| 3a-96 | UNLAWFUL RESTRAINT 2ND DEG | A | Misdemeanor | 1 |

**egister with Connecticut Statewide Automa**
**nformation and Notification (CT SAVIN)**
T SAVIN is a free, confidential service that gives
nd members of the community information abou
ourt case.

Back

Gerald has a criminal history, and has substantiations of neglect by DCF against Julianna for him strangling and threatening to kill me in front of Julianna,

which is what led to his arrest, a restraining order, and protective order, which he later violated, and is now a convicted felon because of that.

He also has a history of DUI and substance and alcohol abuse. He had a prior conviction for a DUI as well.

**Information** is accurate as of November 30, 2017 05:10 AM

**Defendant Information**

**Last, First:** VIGLIONE GERALD JR          **Represented By:** 418379 MJ RICHARDS

**Birth Year:** 1986

**Docket Information**

| | | | |
|---|---|---|---|
| **Docket No:** | N23N-MV09-0058962-S | **Original Arresting Agency:** | LOCAL POLICE NORTH BRANFORD |
| **Court:** | New Haven GA 23 | | |
| **Costs:** | | **Original Arrest Date:** | 10/31/2009 |
| | | **Sentenced Date:** | 2/8/2010 |

**Overall Sentence Information**
Probation with Special Conditions

| Statute | Description | Class | Type | Occ | Offense Date | Plea | Verdict Finding | Verdict Date | Fine | Fee(s) |
|---|---|---|---|---|---|---|---|---|---|---|
| 14-227a | ILL Opn Mv Under Infl Alc/Drug | | | 1 | 10/31/2009 | Guilty | Guilty | 2/8/2010 | $500.00 | $0.00 |

**Sentenced:** 6 Months Jail, Execution Suspended, Probation 18 Months

**Criminal/Motor Vehicle Conviction Case Detail**

*Information is accurate as of February 21, 2025 05:12 AM*

Defendant Information

Last, First: VIGLIONE GERALD JR

Birth Year: 1986

Docket Information

Docket No:          N23N-CR17-0179165-S

Court:              New Haven GA 23

Costs:

Overall Sentence Information

Committed to Department of Corrections (Execution Suspended) Probation Ordered

| Statute | Description | |
|---------|-------------|---|
| 53a-61 | Assault 3rd Deg | A |
| Sentenced: Unconditional Discharge | | |
| 53a-223* | Violation Of Protective Order | D |
| Sentenced: 5 Years Jail, Execution Suspended, Probation 2 Years | | |

Back

Attorneys | Case Look-up | Courts | Directories | Educational Resources | E-Services | FAQ's | Juror Information

Common Legal Terms | Contact Us | Site Map | Website Polic

Copyright © 2025, State of Connecticut Judicial Branch

He also currently has pending charges for another DUI and larceny charges that are currently pending in New Haven Superior Court.



## State of CT - Judicial Branch

### Pending Case Detail

**Information is accurate as of November 08, 2024 05:12 AM**

**Defendant Information**

**Last, First:** VIGLIONE GERALD          **Represented By:**

**Birth Year:** 1986                      **Times on the Docket:** 1

**Docket Information**

**Docket No:** A22M-MI24-4541326-S    **Ticketing Agency:** CSP TROOP G
**Companion:**
**Program:**                          **Ticket Date:** 9/6/2024
**Court:** Milford GA 22              **Bond Amount:** $0 (This case only)
                                      **Bond Type:** Infraction Case Bond Type
**Miscellaneous:**                    (Released From Custody)

**Activity:** Infraction Letter Hearing    **Next Court Date:** 11/25/2024 9:00 AM

**Current Charges**

| Statute | Description | Class | Type | Occ | Offense Date | Plea | Verdict Finding |
|---------|-------------|-------|------|-----|--------------|------|-----------------|
| 14-100a(a) | FLR TO HAVE SEATBELTS IN MV | | Violation | 1 | 9/6/2024 | Not Guilty | |

CT SAVIN - (Connecticut Statewide Automated Victim Information and Notification) is a free, confidential service that gives crime victims and members of the community information about an offender's court case.

Register with CT SAVIN

Back

Attorneys | Case Look-up | Courts | Directories | Educational Resources | E-Services | FAQ's | Juror Information | Media | Opinions | Opportunities | Self-Help | Home





# State of CT - Judicial Branch

## Pending Case Detail

### Information is accurate as of January 23, 2025 05:13 AM

**Defendant Information**

**Last, First:** VIGLIONE GERALD JR          **Represented By:**

**Birth Year:** 1986                          **Times on the Docket:** 3

**Docket Information**

| | | | |
|---|---|---|---|
| **Docket No:** | N23N-CR24-0257099-S | **Arresting Agency:** | YALE UNIVERSITY |
| **Companion:** | | | |
| **Program:** | | **Arrest Date:** | 11/17/2024 |
| **Court:** | New Haven GA 23 | **Bond Amount:** | $0 (This case only) |
| | | **Bond Type:** | Promise to Appear |
| **Miscellaneous:** | | | (Released From Custody) |

| | | | |
|---|---|---|---|
| **Activity:** Awaiting Plea | **Next Court Date:** | 1/29/2025 10:00 AM | |

**Current Charges**

| Statute | Description | Class | Type | Occ | Offense Date | Plea | Verdict Finding |
|---|---|---|---|---|---|---|---|
| 53a-125b | LARCENY 6TH DEG | C | Misdemeanor | 1 | 11/17/2024 | | |
| 53a-125b | LARCENY 6TH DEG | C | Misdemeanor | 1 | 11/17/2024 | | |
| 53a-125b | LARCENY 6TH DEG | C | Misdemeanor | 1 | 11/17/2024 | | |
| 53a-125b | LARCENY 6TH DEG | C | Misdemeanor | 1 | 11/17/2024 | | |

CT SAVIN - (Connecticut Statewide Automated Victim Information and Notification) is a free, confidential service that gives crime victims and members of the community information about an





## Pending Case Detail

*Information is accurate as of January 23, 2025 05:13 AM*

### Defendant Information

**Last, First:** VIGLIONE GERALD JR     **Represented By:** 034874 LYNCH TREMBICKI & BOYNTON

**Birth Year:** 1986     **Times on the Docket:** 7

### Docket Information

| | | | |
|---|---|---|---|
| **Docket No:** | N23N-MV24-0155529-S | **Arresting Agency:** | LOCAL POLICE EAST HAVEN |
| **Companion:** | | | |
| **Program:** | | **Arrest Date:** | 8/12/2024 |
| **Court:** | New Haven GA 23 | **Bond Amount:** | $0 (This case only) |
| | | **Bond Type:** | Promise to Appear |
| **Miscellaneous:** | | | (Released From Custody) |

**Activity:** Awaiting Plea     **Next Court Date:** 1/29/2025 10:00 AM

### Current Charges

| Statute | Description | Class | Type | Occ | Offense Date | Plea | Verdict Finding |
|---|---|---|---|---|---|---|---|
| 14-227a | ILL OPN MV UNDER INFL ALC/DRUG | | | 1 | 3/7/2024 | | |
| 14-236 | FLR TO DRIVE IN PROPER LANE | | | 1 | 3/7/2024 | | |

CT SAVIN - (Connecticut Statewide Automated Victim Information and Notification) is a free, confidential service that gives crime victims and members of the community information about an offender's court case.

Register with CT SAVIN



He also had charges for driving with a phone in his hand.



On 6/9/16, Gerald and I had a hearing in the New Haven Superior Court.

The transcript is below:

The audio of the hearing is below:

> June 9, 2016 Hearing Theodora Antar v. Gerald Viglione Jr.

> https://youtu.be/s2yLJAtt7fs

On 12/8/16, Gerald and I had a hearing in the New Haven Superior Court.

The transcript is below:

The audio of the hearing is below:

On 3/1/17, Gerald and I had a hearing. The transcript is below:

NNH-FA16-4068691-S          :    SUPERIOR COURT

THEODORA ANTAR             :    JUDICIAL DISTRICT OF NEW HAVEN

v.                         :    AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE            :    MARCH 1, 2017


                    TRANSCRIPT OF PROCEEDINGS


   BEFORE THE HONORABLE WAYNE KEENEY, FAMILY SUPPORT MAGISTRATE



A P P E A R A N C E S :


   Representing the Plaintiff:

        MS. THEODORA ANTAR
        Self-Represented Party

   Representing the Defendant:

        MR. GERALD VIGLIONE
        Self-Represented Party




                              Recorded By:
                              Kathy Jordan

                              Recorded and Transcribed By:
                              Shannon Anderson
                              Court Recording Monitor
                              235 Church Street
                              New Haven, Connecticut 06510

1

```
1              SUPPORT ENFORCEMENT:  Okay.  So, we'll call --
2         it's gonna be write-on twenty --
3              THE COURT:  25.
4              SUPPORT ENFORCEMENT:  Is it 25, Chris?
5              THE CLERK:  Twenty -- write-on 22.
6              SUPPORT ENFORCEMENT:  22, Viglione and Antar.
7              THE CLERK:  Would you mind reading that docket
8         number for the monitor, your Honor?
9              THE COURT:  Docket Number FA16-4068691.
10             COURT MARSHAL:  Miss, you can step right over
11        here.
12             THE COURT:  Did you hear me?
13             COURT MARSHAL:  Okay.  Thank you.
14             THE COURT:  FA16-4068691.
15             COURT MONITOR:  Yeah.  I have it on my --
16             THE CLERK:  Please raise your right hands.
17             COURT MONITOR:  -- docket.  Thank you.
18             THE CLERK:  Do you solemnly swear or solemnly
19        and sincerely affirm as the case may be that the
20        evidence you will give concerning this case will be
21        the truth, the whole truth, and nothing but the
22        truth, so help you God or upon penalty of perjury?
23             MR. VIGLIONE:  Yes.
24             SUPPORT ENFORCEMENT:  Yes.
25             MS. ANTAR:  Yes.
26             THE CLERK:  Please state your name and address,
27        ma'am.
```

2

```
 1            MS. ANTAR:  Theodora Antar, 12 Aetna Street,
 2      Apartment 5, Naugatuck, Connecticut, 06770
 3            THE CLERK:  Thank you.
 4            Sir.
 5            MR. VIGLIONE:  Gerald Viglione, 118 Irvington,
 6      New Haven, Connecticut, 06512.
 7            SUPPORT ENFORCEMENT:  Mark Burman, support
 8      enforcement officer in New Haven, Connecticut.
 9            Your Honor, this is all the pro se contempt
10      filed by Miss Antar.  I believe she had issues with
11      daycare she wanted to address.
12            THE COURT:  Is there a daycare arrearage?
13            MS. ANTAR:  It's supposed to be 34 percent of
14      unreimbursed daycare.
15            THE COURT:  Mm-hmm.
16            MS. ANTAR:  The total amount is 203.28 that's
17      owed right now for just daycare.
18            THE COURT:  Mm-hmm.  Anything else?
19            MS. ANTAR:  There's also a balance for $740.83
20      for child support.
21            THE COURT:  Are you working?
22            MR. VIGLIONE:  I'm aware of the child support.
23      I'm waiting for my taxes to go through.  I guess it's
24      still in the process of being withhold from me.  And
25      as of the childcare, 34 percent, I have paperwork
26      stating that I paid $40 over what she says I owe her
27      from December to now.
```

3

```
 1            THE COURT:  Where does the confusion arise then?
 2            MS. ANTAR:  I have every check that I paid for
 3       childcare for my daughter since the order was put in
 4       place from June --
 5            THE COURT:  Mm-hmm.
 6            MS. ANTAR:  -- to now, and I also have
 7       everything that he paid.  So, I paid a total of three
 8       -- $3,092, and 34 percent of that would be $1,051.28
 9       which is what he owes total.  So, he --
10            THE COURT:  Did -- wait, wait, wait.  You paid
11       that in cash or that's what the bill was?
12            MS. ANTAR:  The total amount that I've been --
13       that I've paid so far for daycare was 3092, so his
14       percentage would -- of that is 1,051.28.  And from
15       him, I've received $848.  So, the left over from that
16       is 203.28.  And I have every receipt accounted for
17       from the first -- from the first time.
18            THE COURT:  You got some -- you got some
19       evidence here you can show me that you've paid it
20       all?
21            MR. VIGLIONE:  The only evidence I could show
22       you of what I have is from December, 'cause I was --
23       had text messages of her saying that I owed it.
24            THE COURT:  You got a canceled check for this
25       amount of money?
26            MR. VIGLIONE:  What's that?
27            THE COURT:  You got a canceled check for this
```

4

```
 1        amount of money?
 2            MR. VIGLIONE:  No.  I just -- I -- I have all of
 3        it here, all my paperwork for checks that I gave her.
 4        And before the December happened, I was putting money
 5        directly into in her account, which I have those
 6        receipts, but my lawyer told me not to do that
 7        because there's no proof of me putting that --
 8            THE COURT:  That's probably where that $203 is
 9        -- the confusion is.
10            MR. VIGLIONE:  I have -- I have those receipts
11        too though.  I just -- I didn't add up --
12            THE COURT:  Well, that's -- I'm sorry, they --
13        you know, there's a way to pay this, and that's the
14        way you're supposed to pay it.  If you didn't pay it
15        that way, well, then you owe $203.28.  Okay.  But how
16        soon can you put -- what -- what's the weekly
17        obligation here?
18            MR. VIGLIONE:  It's, what, 28.22 a week.
19            THE COURT:  Twenty --
20            SUPPORT ENFORCEMENT:  $87 a week in current
21        support.
22            MR. VIGLIONE:  Oh, that's support -- child
23        support.  Yes.
24            THE COURT:  $87 a week in child support.  We're
25        current on that?
26            SUPPORT ENFORCEMENT:  He's behind $740.83.
27            THE COURT:  Why is that?
```

5

```
1            MR. VIGLIONE:  'Cause the -- I got a letter from
2        the IRS last month saying that they're gonna --
3        they're gonna take --
4            THE COURT:  So you decided you weren't paying
5        anything until they seize that amount of money?
6            MR. VIGLIONE:  Well, yeah, because when I --
7            THE COURT:  Where did you get that idea from?
8            MR. VIGLIONE:  Well, 'cause every week -- every
9        week I go down to the child enforcement services, and
10       they said -- I got two different answers about if I
11       over pay, then they give it to her was a gift, and
12       then one lady was, like, no, you'll get your money
13       back if you over pay.  So, I still been paying my
14       weekly, but I've been waiting to see --
15           THE COURT:  When was the -- when was the last
16       time you paid your weekly?
17           MR. VIGLIONE:  I paid it the 23rd or -- I paid
18       it on 2/27, $300, 'cause I'm trying to get whatever I
19       do owe back.  But eleven or twelve hundred dollars
20       came out of my taxes already.  So, I'm waiting for it
21       to go through the system to see the following --
22           THE COURT:  So that's already been seized.
23           MR. VIGLIONE:  Yes.
24           THE COURT:  So, that -- that's -- in effect --
25           MR. VIGLIONE:  Yes.
26           THE COURT:  -- the arrearage of $740 is in the
27       pipelines.  Right?
```

6

```
1          MR. VIGLIONE:  Yes.
2          THE COURT:  Doesn't that sound like --
3          SUPPORT ENFORCEMENT:  If -- if it's true what
4     he's saying, correct, it would go towards the
5     balance.
6          THE COURT:  Okay.  All right.  Let's assume that
7     that's gonna get paid shortly.  Oftentimes, madam,
8     when they seize a tax returns, we don't have the
9     swiftest bureaucracy.  It -- it -- it sounds to me
10    like it will catch up with you.  Okay.  Are you
11    working?
12         MS. ANTAR:  Yes, I'm working.  And my concern is
13    that he has another child who he also has a balance
14    that he owes to her.  So, his tax return was only
15    1400.  He owes just me 740 and he owes her a similar
16    amount, so that's not even gonna cover the total
17    amount that's owed.  And he said he paid 300, but out
18    of that, I only received $74 which is less than my
19    weekly amount.  So, every week, I've -- the balance
20    keeps growing, keeps growing.  And I would like it --
21    to get income withholding to be taken out of his
22    check.
23         MR. VIGLIONE:  That will be done soon as
24    possible.  I -- I was told by the guy that --
25         THE COURT:  All right.
26         MR. VIGLIONE:  -- it needs to be done
27    immediately.
```

7

```
 1          THE COURT:  Let -- let's continue this for five
 2     weeks.  We'll monitor.  First, I'm ordering income
 3     withholding.  So, that garnishment is not gonna go
 4     into place tomorrow.
 5          MR. VIGLIONE:  Yep.
 6          THE COURT:  It's gonna take two weeks -- two pay
 7     periods sometimes.  All right.
 8          MR. VIGLIONE:  Yep.
 9          THE COURT:  So, you -- you are to be sure that
10     $87 a week is paid.
11          MR. VIGLIONE:  Yep.
12          THE COURT:  You look at your check, they didn't
13     take $87 a week out of it, you give it to support
14     enforcement.
15          MR. VIGLIONE:  I go pay.
16          THE COURT:  All right.  By the time we get back,
17     this -- the intercept will probably have, you know,
18     arrived, and then we'll -- we can -- it may -- it may
19     be almost all of it or it may be some of it or we'll
20     -- we'll have a better idea of what the remaining
21     amount is, and then I can order that in a lump sum.
22     All right.
23          MS. ANTAR:  And for the daycare, is that gonna
24     be paid in a lump sum as well or?
25          THE COURT:  How much is your -- your daycare
26     weekly?
27          MS. ANTAR:  $83.
```

8

```
 1              THE COURT:  And what percentage is he supposed
 2       to pay?
 3              MS. ANTAR:  34 percent.
 4              THE COURT:  What does that come out to?
 5              MR. VIGLIONE:  Twenty --
 6              MS. ANTAR:  28.22.
 7              THE COURT:  Why don't we put an order in,
 8       prospectively, for $28 a week towards child --
 9       childcare.  That way that also will come out of your
10       paycheck and you won't fall behind.
11              MR. VIGLIONE:  And that -- that will go through
12       child enforcement services?
13              THE COURT:  Everything will come out of your
14       check and go to support enforcement.
15              MR. VIGLIONE:  Okay.
16              THE COURT:  All right.
17              MS. ANTAR:  And then for the -- the past balance
18       of 203, how will that -- will he have to pay me
19       directly?
20              THE COURT:  I want -- I want to see -- let's --
21       I wanna get this in -- in place first so we can do a
22       better calculation of what he owes.  I accept that he
23       probably owes the $203.  I wanna know what he owes on
24       the 740 before I set lump sum amounts, you know.  I
25       don't -- what I try to do, just so you both
26       understand this, is I -- I understand there's
27       financial strains, in particular, in young couples
```

9

```
 1        and stuff like that.  So, if I overburden the obligor
 2        and then I end up with nothing, I haven't done the
 3        child one bit of good.  So, I want to do this in a
 4        methodical way.  We have the income withholding in
 5        place now.  That's insurance that there will be a
 6        flow of resources coming to you.  I -- you know,
 7        you'll have to indulge me for five weeks or whatever
 8        and then we'll straighten the rest of this -- this
 9        out.
10            I would suggest, sir, that you start putting
11        some monies aside because I -- it's likely I'm gonna
12        be ordering a lump sum amount.  Do you understand me?
13            MR. VIGLIONE:  Yep.  No problem.
14            THE COURT:  Date?
15            THE CLERK:  Five weeks is April 5th.
16            THE COURT:  April 5th.
17            MR. VIGLIONE:  In five weeks, sir, will I be
18        able to show you my payments that I paid to --
19            THE COURT:  Yeah.  We'll -- we'll -- we'll talk
20        about that then.
21            MR. VIGLIONE:  Okay.
22            THE COURT:  You might want to do a closer
23        calculation, so you -- and I want it -- you wanna lay
24        it out handwritten, go ahead.  But --
25            MR. VIGLIONE:  Yes, sir.
26            THE COURT:  -- we know this much, you didn't pay
27        it the way you were supposed to pay it.
```

10

1            MR. VIGLIONE:  Well, yeah, I know I'm behind.

2            THE COURT:  Okay.

3            MR. VIGLIONE:  But the childcare, I know I'm up-

4       to-date.

5            MS. ANTAR:  Thank you.

6            THE COURT:  You're welcome.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

| NNH-FA16-4068691-S | : | SUPERIOR COURT |
| THEODORA ANTAR | : | JUDICIAL DISTRICT OF NEW HAVEN |
| v. | : | AT NEW HAVEN, CONNECTICUT |
| GERALD VIGLIONE | : | MARCH 1, 2017 |

C E R T I F I C A T I O N

      I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, New Haven, Connecticut, before the Honorable Wayne Keeney, Family Support Magistrate, on the 1st day of March, 2017.

      Dated this **14th** day of May, 2024 in New Haven, Connecticut.

_____
Shannon Anderson
Court Recording Monitor

```
NNH-FA16-4068691-S        :   SUPERIOR COURT

THEODORA ANTAR           :   JUDICIAL DISTRICT OF NEW HAVEN

v.                       :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE          :   MARCH 1, 2017



                    E L E C T R O N I C

                C E R T I F I C A T I O N



        I hereby certify the electronic version is a true and

correct transcription of the audio recording of the above-

referenced case, heard in Superior Court, Judicial District of

New Haven, New Haven, Connecticut, before the Honorable Wayne

Keeney, Family Support Magistrate, on the 1st day of March, 2017.



        Dated this 14th day of May, 2024 in New Haven,

Connecticut.


                                    Shannon Anderson
                                    _____
                                    Shannon Anderson
                                    Court Recording Monitor
```

On 4/5/17, we had another hearing. The transcript is below:

On 5/17/17, we had another hearing. The transcript is below:

NNH-FA16-4068691-S          :    SUPERIOR COURT

THEODORA ANTAR             :    JUDICIAL DISTRICT OF NEW HAVEN

v.                        :    AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE           :    MAY 17, 2017


TRANSCRIPT OF PROCEEDINGS


BEFORE THE HONORABLE WAYNE KEENEY, FAMILY SUPPORT MAGISTRATE


A P P E A R A N C E S :


Representing the Plaintiff:

    MS. THEODORA ANTAR
    Self-Represented Party

Representing the Defendant:

    ATTORNEY TERRENCE WYNNE
    P.O. Box 91
    Watertown, Connecticut 06795



                              Recorded By:
                              Kathy Jordan

                              Recorded and Transcribed By:
                              Shannon Anderson
                              Court Recording Monitor
                              235 Church Street
                              New Haven, Connecticut 06510

1

```
 1            SUPPORT ENFORCEMENT:  Number 33, your Honor.
 2       The matter of Theodora Antar versus Gerald Viglione,
 3       Jr.
 4            ATTY. WYNNE:  Good morning, your Honor.
 5       Terrence Wynne for defendant.
 6            THE CLERK:  Parties, please raise your right
 7       hands.  Do you solemnly swear or solemnly and
 8       sincerely affirm as the case may be that the evidence
 9       you will give concerning this case will be the truth,
10       the whole truth, and nothing but the truth, so help
11       you God or upon penalty of perjury?
12            SUPPORT ENFORCEMENT:  I do.
13            MR. VIGLIONE:  Yes.
14            MS. ANTAR:  Yes.
15            THE CLERK:  Please state your name and address,
16       ma'am.  Please state your name and --
17            MS. ANTAR:  Theodora Antar, 12 Aetna Street,
18       Number 5, Naugatuck, Connecticut, 06770.
19            THE CLERK:  Thank you.
20            Sir.
21            MR. VIGLIONE:  Gerald Viglione, Jr.  118
22       Irvington, New Haven, Connecticut, 06513.
23            SUPPORT ENFORCEMENT:  Jo-Anne Veillette, support
24       enforcement, New Haven.
25            ATTY. WYNNE:  Terrence Wynne for defendant.
26            SUPPORT ENFORCEMENT:  Your Honor, this contempt
27       was continued from April 5th for a lump sum of $665
```

2

```
1        and weekly compliance.  Mr. Viglione did come into
2        our office yesterday with $363 towards his order.  He
3        has a shortfall of $85.  He is in substantial
4        compliance.  We do not have a wage withholding, your
5        Honor.
6             ATTY. WYNNE:  He -- he's paying it all.  And, in
7        fact, what support enforcement is claiming, the total
8        arrearage that is owed to the lady is $85.  In fact,
9        he has an -- a credit on the daycare of a minus $84.
10       We'd ask that the contempt be concluded.
11            THE COURT:  Okay.  All set.  Anything else?
12            SUPPORT ENFORCEMENT:  Apparently --
13            MS. ANTAR:  I'm sorry.  I'm just confused about
14       why you're saying there's a balance and --
15            SUPPORT ENFORCEMENT:  Okay.  It's showing a
16       balance on the support.
17            THE COURT:  Well, we can work that out in the
18       back.
19            SUPPORT ENFORCEMENT:  Yeah.
20            MS. ANTAR:  Okay
21            THE COURT:  It's -- conclude the contempt.
22            SUPPORT ENFORCEMENT:  Do you wanna conclude the
23       contempt?  You're all set?
24            THE COURT:  We're concluding the contempt.
25            MS. ANTAR:  Yes.
26            SUPPORT ENFORCEMENT:  Okay.
27            ATTY. WYNNE:  We -- we thank the Court.
```



3

```
1          MR. VIGLIONE:  Thank you.
2          SUPPORT ENFORCEMENT:  All set.
3          MS. ANTAR:  Okay.
4          ATTY. WYNNE:  Thank you, your Honor.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
```

NNH-FA16-4068691-S          :   SUPERIOR COURT

THEODORA ANTAR             :   JUDICIAL DISTRICT OF NEW HAVEN

v.                         :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE           :   MAY 17, 2017


C E R T I F I C A T I O N


        I hereby certify the foregoing pages are a true and

correct transcription of the audio recording of the above-

referenced case, heard in Superior Court, Judicial District of

New Haven, New Haven, Connecticut, before the Honorable Wayne

Keeney, Family Support Magistrate, on the 17th day of May, 2017.


        Dated this **14th** day of May, 2024 in New Haven,

Connecticut.


                                _____
                                Shannon Anderson
                                Court Recording Monitor

```
NNH-FA16-4068691-S          :   SUPERIOR COURT

THEODORA ANTAR             :   JUDICIAL DISTRICT OF NEW HAVEN

v.                         :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE            :   MAY 17, 2017




                    E L E C T R O N I C

                 C E R T I F I C A T I O N




         I hereby certify the electronic version is a true and

correct transcription of the audio recording of the above-

referenced case, heard in Superior Court, Judicial District of

New Haven, New Haven, Connecticut, before the Honorable Wayne

Keeney, Family Support Magistrate, on the 17th day of May, 2017.




         Dated this 14th day of May, 2024 in New Haven,

Connecticut.


                                  Shannon Anderson
                              _____
                                  Shannon Anderson
                                  Court Recording Monitor
```

On 8/30/17, we had another hearing. The transcript is below:

NNH-FA16-4068691-S          :    SUPERIOR COURT

THEODORA ANTAR             :    JUDICIAL DISTRICT OF NEW HAVEN

v.                         :    AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE            :    AUGUST 30, 2017


                    TRANSCRIPT OF PROCEEDINGS


   BEFORE THE HONORABLE WAYNE KEENEY, FAMILY SUPPORT MAGISTRATE



A P P E A R A N C E S :


    Representing the Plaintiff:

         Not Present

    Representing the Defendant:

         Not Present




                              Recorded By:
                              Kathy Jordan

                              Recorded and Transcribed By:
                              Shannon Anderson
                              Court Recording Monitor
                              235 Church Street
                              New Haven, Connecticut 06510

1

```
 1           SUPPORT ENFORCEMENT:  And then we have number
 2      22, Antar and Viglione.  This is a first time down
 3      pro se contempt.  I don't know if she got him served
 4      and she's not here.
 5           THE COURT:  Mark it off, failure to prosecute.
 6           SUPPORT ENFORCEMENT:  Thank you.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
```

```
NNH-FA16-4068691-S          :   SUPERIOR COURT

THEODORA ANTAR              :   JUDICIAL DISTRICT OF NEW HAVEN

v.                          :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE             :   AUGUST 30, 2017
```

C E R T I F I C A T I O N

     I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, New Haven, Connecticut, before the Honorable Wayne Keeney, Family Support Magistrate, on the 30th day of August, 2017.

     Dated this **16th** day of May, 2024 in New Haven, Connecticut.

                                      _____
                                        Shannon Anderson
                                        Court Recording Monitor

```
NNH-FA16-4068691-S         :   SUPERIOR COURT

THEODORA ANTAR            :   JUDICIAL DISTRICT OF NEW HAVEN

v.                        :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE           :   AUGUST 30, 2017




                    E L E C T R O N I C

                  C E R T I F I C A T I O N




          I hereby certify the electronic version is a true and

correct transcription of the audio recording of the above-

referenced case, heard in Superior Court, Judicial District of

New Haven, New Haven, Connecticut, before the Honorable Wayne

Keeney, Family Support Magistrate, on the 30th day of August,

2017.




          Dated this 16th day of May, 2024 in New Haven,

Connecticut.



                              Shannon Anderson
                              _____
                              Shannon Anderson
                              Court Recording Monitor
```

On 9/7/17, we had another court date. The transcript is below:

```
NNH-FA16-4068691-S          :   SUPERIOR COURT

ANTAR THEODORA              :   JUDICIAL DISTRICT OF NEW HAVEN

v.                          :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE             :   SEPTEMBER 7, 2017



                    TRANSCRIPT OF PROCEEDINGS



              BEFORE THE HONORABLE ERIKA TINDILL, JUDGE


A P P E A R A N C E S :


    Representing the Plaintiff:

        Not Present

    Representing the Defendant:

        Not Present






                              Recorded By:
                              Kate Brinley

                              Transcribed By:
                              Shannon Anderson
                              Court Recording Monitor
                              235 Church Street
                              New Haven, Connecticut 06510
```



1

```
 1            THE COURT:  Antar versus Viglione.
 2            THE CLERK:  No service.
 3            THE COURT:  129 and 130 are dismissed.
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
```

```
NNH-FA16-4068691-S          :   SUPERIOR COURT

ANTAR THEODORA              :   JUDICIAL DISTRICT OF NEW HAVEN

v.                          :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE             :   SEPTEMBER 7, 2017
```

C E R T I F I C A T I O N

        I hereby certify the foregoing pages are a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District of
New Haven, New Haven, Connecticut, before the Honorable Erika
Tindill, Judge, on the 7th day of September, 2017.

        Dated this **16th** day of May, 2024 in New Haven,
Connecticut.

                                _____
                                Shannon Anderson
                                Court Recording Monitor

```
NNH-FA16-4068691-S          :   SUPERIOR COURT

ANTAR THEODORA              :   JUDICIAL DISTRICT OF NEW HAVEN

v.                          :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE             :   SEPTEMBER 7, 2017




                   E L E C T R O N I C

                 C E R T I F I C A T I O N




        I hereby certify the electronic version is a true and

correct transcription of the audio recording of the above-

referenced case, heard in Superior Court, Judicial District of

New Haven, New Haven, Connecticut, before the Honorable Erika

Tindill, Judge, on the 7th day of September, 2017.




        Dated this 16th day of May, 2024 in New Haven,

Connecticut.


                                    _____
                                    Shannon Anderson
                                    Court Recording Monitor
```

On May 10, 2019, we had another court hearing. The transcript is below:

| NNH-FA16-4068691-S | : | SUPERIOR COURT |
|---|---|---|
| THEODORA ANTAR | : | JUDICIAL DISTRICT OF NEW HAVEN |
| v. | : | AT NEW HAVEN, CONNECTICUT |
| GERALD VIGLIONE | : | MAY 10, 2019 |

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE ERIKA TINDILL, JUDGE

A P P E A R A N C E S :

Representing the Plaintiff:

    ATTORNEY JESSICA WILSON
    157 Church Street
    19th Floor
    New Haven, Connecticut 06510

Representing the Defendant:

    MR. GERALD VIGLIONE
    Self-Represented Party

Recorded By:
Sarah Burke

Transcribed By:
Shannon Anderson
Court Recording Monitor
235 Church Street
New Haven, Connecticut 06510

1

```
 1          THE COURT:  Good afternoon.  Okay.  Sir, come
 2     forward, ma'am.
 3          Counsel, if you would just identify yourself for
 4     the record.
 5          ATTY. WILSON:  Sure.  Good afternoon, your
 6     Honor.  Attorney Jessica Wilson for the plaintiff
 7     Theodora Antar who's present and to my left.
 8          THE COURT:  Okay.  Let me swear in the parties
 9     quickly.  Will both of you raise your right hands
10     please.
11          THE CLERK:  Do you solemnly swear or solemnly
12     and sincerely affirm as the case may be that the
13     evidence you shall give concerning this case shall be
14     the truth, the whole truth, and nothing but the
15     truth, so help you God or upon penalty of perjury?
16          MR. VIGLIONE:  I do.
17          MS. ANTAR:  Yes.
18          THE CLERK:  Okay.  One at a time now, ma'am,
19     starting with you, please state your name and address
20     for the record.
21          MS. ANTAR:  Theodora Antar, 856 Shagbark Drive,
22     Orange, Connecticut, 06477.
23          THE CLERK:  Thank you.
24          Sir.
25          MR. VIGLIONE:  Gerald Viglione, 118 Irvington
26     Street, New Haven, Connecticut, 06512.
27          THE CLERK:  Thank you both.  You may be seated.
```

2

```
 1            THE COURT:  Okay.  Attorney Wilson, I know that
 2       you are diligently working on this case.  I -- I had
 3       you called up only for this reason.  It's quarter to
 4       one and this is scheduled for a half-day proceeding
 5       on your client's motion for modification, post-
 6       judgment.  It appears to be financial in nature
 7       regarding a 2016 order.  I have a matter that
 8       continued -- is continued from yesterday at 2 o'clock
 9       and I am the only Judge in New Haven district today.
10            ATTY. WILSON:  I understand that, your Honor.
11       And just to clarify --
12            THE COURT:  So --
13            ATTY. WILSON:  -- so, we -- we're actually here
14       on her motion to -- so, there was a -- she -- my
15       client filed it as a pro se --
16            THE COURT:  Yes.
17            ATTY. WILSON:  -- originally.  We are here on
18       the motion to modify visitation that was -- the
19       parties --
20            THE COURT:  Oh.
21            ATTY. WILSON:  Yes.  So, the -- so, we're
22       actually not pursuing any financial --
23            THE COURT:  Oh, okay.
24            ATTY. WILSON:  -- issues right now.  So, just as
25       a little bit of history, the parties, as pro ses, had
26       an agreement in June 2016.  It was then made a little
27       bit more clear in December of 2016.  That's marking
```

3

```
1        number -- entry 117.
2              THE COURT:  Mm-hmm.
3              ATTY. WILSON:  Miss Antar has since retained
4        counsel and we are trying to flush out an agreement
5        that, you know, actually speaks to the conditions
6        right now.
7              THE COURT:  Okay.  So, the -- is the most recent
8        order from December 8th of 2016 where the -- Miss
9        Antar has sole legal custody --
10             ATTY. WILSON:  Correct, your Honor.
11             THE COURT:  -- of Julianna?
12             ATTY. WILSON:  Right.  And as you'll see from
13       the agreement, you know, it's -- it's -- it's very
14       minor, so I am, of course, making it as detailed as
15       humanly possible.
16             THE COURT:  I see.
17             ATTY. WILSON:  And my hope is to -- you know,
18       I'm typing it up actually on an agreement form with
19       the hopes that Mr. Viglione will be in agreement and
20       any issues that are not resolved -- you know, I'm on,
21       like, bullet point 14.
22             THE COURT:  I see.
23             ATTY. WILSON:  Any issues that -- you know, I'm
24       hoping to resolve as much as we can through
25       agreement, and anything that remain, that your Honor
26       hear.
27             THE COURT:  Okay.
```

4

```
 1          ATTY. WILSON:  And in terms of scheduling, I
 2     also am only here -- can only be here till 3:30 so.
 3          THE COURT:  Oh.  Okay.  Miss Antar, do you
 4     recall the date -- is it Antar or Antart?
 5          MS. ANTAR:  Antar.
 6          THE COURT:  Antar.  Okay.
 7          MS. ANTAR:  Yes.
 8          THE COURT:  Do you recall the date that you
 9     filed the motion about -- so, the only motion I have
10     that is -- has not been litigated, most recent
11     motion, is one you filed February 21$^{st}$, but that is
12     about money.  What you say in that motion is that Mr.
13     Viglione was ordered in June of 2016 to pay $87 per
14     week and 34 percent of unreimbursed medical expenses,
15     and you indicate that there's been a change in
16     employment and concern regarding inaccuracies on a
17     financial affidavit.  But you're not proceeding on
18     that.  Is that right?
19          MS. ANTAR:  Correct.
20          THE COURT:  Okay.
21          ATTY. WILSON:  Your Honor --
22          THE COURT:  So, what's the date of the motion
23     that is pending?
24          ATTY. WILSON:  Your Honor, so, if you go to the
25     second page of that under subsection D, modified
26     visitation.  We were --
27          THE COURT:  Oh.  You're just proceeding on that
```

5

```
1        section?
2             ATTY. WILSON:  Exactly.
3             THE COURT:  Got it.
4             ATTY. WILSON:  And we were here -- I should -- I
5        should clarify, when you said is the most recent
6        order that of December 8th, 2016, we actually --
7             THE COURT:  Yeah.
8             ATTY. WILSON:  -- I apologize -- were here on
9        April 4th, 2019, just last month, in front of Judge
10       Klau --
11            THE COURT:  Okay.
12            ATTY. WILSON:  -- where a couple more orders
13       were entered regarding Talking Parents app.
14            THE COURT:  Okay.  Okay.
15            ATTY. WILSON:  Pretty much about communication.
16       And then it was set -- you know, we realized we are
17       at an impasse and so --
18            THE COURT:  I see.
19            ATTY. WILSON:  -- he set it for a half-day for
20       today.
21            THE COURT:  Got it.
22            ATTY. WILSON:  So, we're only here on point D,
23       the visitation and parenting time.  And I'm hoping to
24       come to you with very limited issues, if any.
25            THE COURT:  Okay.  Mr. Viglione, you understand
26       what's happening?
27                 MR. VIGLIONE:  Yes.
```

6

```
1          THE COURT:  Okay.  So, Miss Antar has filed a
2     motion regarding a number of issues, some financial.
3     But she's not proceeding on the changes in the
4     financial orders.  What she wants to do is ask the
5     Court to modify the parenting plan that's currently
6     in place.  So, I guess that's where we are.  Okay.
7          MR. VIGLIONE:  Yep.
8          THE COURT:  And counsel has to leave at --
9     What'd you say, 3:30?
10         ATTY. WILSON:  3:30.
11         THE COURT:  Okay.  So, in the event that you're
12    not able to reach an agreement -- and let me be
13    clear.
14         MR. VIGLIONE:  Mm-hmm.
15         THE COURT:  You do not -- you are not required
16    to agree, neither one of you.
17         Ma'am, it's your motion.  You have the right to
18    have a full hearing.
19         Sir, you have the right to defend yourself --
20         MR. VIGLIONE:  Mm-hmm.
21         THE COURT:  -- of the -- the allegations or --
22    or what she's asking for.  And, if you're not able to
23    come to some agreement and I don't have time to hear
24    you today, we'll get a -- a mutually agreeable date
25    and we can come back on that narrow issue.  Okay.  I
26    just wanted to alert I am literally the only game in
27    town today, the only family Judge in a 128,000-
```

7

```
1          resident city for today for family but.  Okay.
2               ATTY. WILSON:  All right, your Honor.
3               THE COURT:  All right.
4               ATTY. WILSON:  We'll check back with you.
5               MR. VIGLIONE:  So, we're leaving to go talk
6          about an agreement and then coming back here again?
7               THE COURT:  Yeah, to go talk about an -- well,
8          Attorney Wilson is trying to see if you two can agree
9          on -- you may not agree on everything today; you may
10         agree on -- let's say if there are five things, you
11         may agree on four of those, and then I just have to
12         figure out the last one.  You understand what I'm
13         saying?  But you don't -- what -- what I want you to
14         understand is you are not required to agree.  That's
15         not a requirement.  You -- you are entitled to a
16         hearing.  I just want to manage expectations about
17         how that might proceed today.
18              MR. VIGLIONE:  But, in the long run, if I don't
19         agree to anything, we're gonna have another court
20         date?
21              THE COURT:  Yes.
22              MR. VIGLIONE:  So, even -- should we just make
23         another court date now, 'cause, like, there's way
24         other things I could be doing.  I'm missing a whole
25         day of work for this right now.
26              THE COURT:  Yeah.
27              MR. VIGLIONE:  And I'm definitely not gonna
```

8

```
1        agree to everything she wants.
2              THE COURT:  Yeah.  You -- you could.
3              MR. VIGLIONE:  All right.  Yeah.
4              THE COURT:  But that -- is there a day when
5        you're not gonna miss work?  Like, when you --
6              MR. VIGLIONE:  On the weekend.
7              THE COURT:  Oh, yeah.  And I -- you know --
8              ATTY. WILSON:  Your Honor, why don't I -- I --
9        like I said, I'm on point 14 of this; I'm almost
10       done.  So, I -- I think what would be best would be
11       to sit with him and show him what we have so far.
12             MR. VIGLIONE:  I wish to not sit with them.
13             ATTY. WILSON:  See, your Honor, and just -- and
14       I want some --
15             THE COURT:  Have you been to family relations
16       already?
17             ATTY. WILSON:  We were last time.  And I -- and,
18       your Honor, just for the record.  So Mr. Viglione is
19       not represented.
20             THE COURT:  Yeah.
21             ATTY. WILSON:  So, I, of course, as Miss Antar's
22       counsel, reach out to him and --
23             THE COURT:  Yeah.  Excuse me.
24             COURT MARSHAL:  God bless you, your Honor.
25             ATTY. WILSON:  -- Mr. Viglione has responded
26       with if you contact me again, I'm calling the police.
27             THE COURT:  Yeah.
```

9

```
 1          ATTY. WILSON:  So, I just want some
 2     clarification on that.  I don't want to upset --
 3          MR. VIGLIONE:  The clarification is, is we
 4     agreed to have a Parent Talk app, which I therefore
 5     downloaded so it's all recorded and everything.  Just
 6     because she responds to me with what I need to do on
 7     the weekend -- which I know what I have to do on the
 8     weekend.  It's already been put in that paper.
 9          THE COURT:  Yep.
10          MR. VIGLIONE:  It's all there in print, black
11     and white.  So, I don't see why I have to respond
12     back to her if I -- if she's telling me to do what
13     I'm already responsible for doing.
14          THE COURT:  Yeah.
15          MR. VIGLIONE:  Taking her to dance, taking her
16     to church.  She does all that all the time, you know.
17     I'm not responsible if -- if she has a birthday party
18     or anything else on the weekends to do these.
19          THE COURT:  How old is Julianna?
20          MR. VIGLIONE:  Four.
21          THE COURT:  She's four?
22          MR. VIGLIONE:  She's four.  I have her every
23     single weekend, but she makes her go to dance, which
24     I drive her to dance.  Sundays she goes to church.
25     So, I mean, I only have her certain part of the days
26     on Saturday and Sunday 'cause she --
27          THE COURT:  Yeah.  Would it make sense to do a
```

10

```
1          referral to family relations?

2              ATTY. WILSON:  Umm.

3              THE COURT:  No?  You don't -- you don't like

4          that idea?

5              ATTY. WILSON:  Let me -- me show --

6              MR. VIGLIONE:  No.

7              THE COURT:  No.

8              MR. VIGLIONE:  I don't like any of the -- I've

9          -- I want it to stay the way it is.  It works the way

10         it is now.

11             THE COURT:  Oh, okay.

12             MR. VIGLIONE:  She's trying to change it for the

13         better for her but it's already okay.

14             THE COURT:  Yeah.

15             MR. VIGLIONE:  Everything is good.

16             THE COURT:  Okay.

17             MR. VIGLIONE:  My third party was my mother, and

18         she does not agree with anything my mother says or

19         wants.  She doesn't wanna contact my mother as a

20         third party.

21             THE COURT:  Yeah.

22             MR. VIGLIONE:  So, therefore --

23             THE COURT:  So, yeah.  Well, that makes sense.

24         But let me just explain.  Because Attorney Wilson

25         represents Theodora, the only way to communicate with

26         Theodora is through her counsel.

27             MR. VIGLIONE:  Is Parent Talk app that she made
```

11

1       me download.

2          THE COURT:  Yes, I see that's an order, but --

3       but Attorney Wilson is her legal representative so.

4          MR. VIGLIONE:  So, why do I have to -- why does

5       she have to contact me when she could do it through

6       the Parent Talk app, or my mother which is the third

7       party?

8          THE COURT:  Who, Attorney Wilson?

9          MR. VIGLIONE:  No.  Theodora.

10          THE COURT:  Oh, yeah.  No.  But -- but -- but

11       when there's a legal case -- so, if you had an

12       attorney here, Attorney Wilson wouldn't contact you,

13       she would have to contact --

14          MR. VIGLIONE:  But her contacting me isn't

15       anything to do with legal matter.  It's to do with me

16       bringing her home on Mother's Day.

17          THE COURT:  No, no.  Attorney Wilson is her

18       legal representative so --

19          MR. VIGLIONE:  All right.  I need another court

20       date to have a -- to get an attorney.

21          THE COURT:  You want to get an attorney?

22          MR. VIGLIONE:  Yeah.

23          THE COURT:  Okay.

24          MR. VIGLIONE:  That's it.

25          THE COURT:  How long do you think it's gonna

26       take you to get an attorney?

27          MR. VIGLIONE:  Give me a week.

12

```
 1              THE COURT:  You sure?
 2              MR. VIGLIONE:  Yep.
 3              THE COURT:  Okay.  But, if we come back in a
 4       week, you can't come and tell me, look, I didn't get
 5       an attorney.
 6              MR. VIGLIONE:  That's okay.  Give me -- give me
 7       two weeks then to be for sure.
 8              THE COURT:  You want two weeks?
 9              ATTY. WILSON:  Your Honor, for the record, when
10       we were here in April --
11              THE COURT:  Yeah.
12              ATTY. WILSON:  -- Mr. Viglione said I'm outta
13       here, I'm going to get a lawyer.  Mr. Viglione says
14       I'm showing these -- these messages --
15              THE COURT:  Yeah.
16              ATTY. WILSON:  -- to my lawyer.  And I said --
17              MR. VIGLIONE:  Mm-hmm.
18              ATTY. WILSON:  And, of course, you know,
19       ethically, I said, if you have an attorney, please
20       let me know.
21              THE COURT:  Yeah.
22              ATTY. WILSON:  But he does threaten me with the
23       police.
24              THE COURT:  Mm-hmm.
25              ATTY. WILSON:  And -- and, for the record, just
26       -- just so -- if we're gonna go there regarding a
27       third party, the order that was entered in December
```

13

1       8th, 2016 that refers to drop-offs at the mother's

2       residence, et cetera, is because there was a

3       restraining order in effect because of a

4       strangulation --

5               THE COURT:  Mm-hmm.

6               ATTY. WILSON:  -- that occurred, and that has

7       now lifted.  So, that is one of the substantial

8       change in circumstances, among many other.  And as

9       you can see, really, all we're -- we're not trying to

10      change a lot; we're just trying to fine tune this

11      thing so --

12              THE COURT:  Yeah.

13              ATTY. WILSON: -- it makes some sense, I mean,

14      'cause these parties were not even represented.  So,

15      as -- as --

16              THE COURT:  Okay.

17              ATTY. WILSON:  -- your Honor knows --

18              THE COURT:  Well, I --

19              ATTY. WILSON:  -- it'd be much more detailed.

20              THE COURT:  -- I do see that Judge Klau ordered

21      that the app be used to communicate among the parties

22      in regards to Julianna in all cases except in an

23      emergency when the parties shall communicate through

24      the defendant's mother.  I do see that.  But it -- it

25      sounds to me -- and I'm only guessing --

26              MR. VIGLIONE:  I wish to have no contact with

27      her.

14

```
 1          THE COURT:  -- I don't know that you're gonna
 2     reach an agreement today on any issue.  And Mr.
 3     Viglione certainly has the right to retain counsel.
 4          Now, when we come back and you don't have
 5     counsel, we're going forward whether you have one or
 6     not.
 7          MR. VIGLIONE:  No problem.
 8          THE COURT:  So, we can do that.  But I'm -- I'm
 9     not sure that it's a good use of anybody's time at
10     this point today.
11          ATTY. WILSON:  Okay.
12          THE COURT:  So, you want just two weeks?
13          MR. VIGLIONE:  Yeah, that's fine.
14          THE COURT:  Okay.  So, we'll set it down --
15     let's see.  Today is the 10th.  Do you wanna do the
16     24th?
17          ATTY. WILSON:  Your Honor, two -- just two
18     things first.
19          THE COURT:  Okay.
20          ATTY. WILSON:  So, my client is nine months
21     pregnant.
22          THE COURT:  Yep.
23          ATTY. WILSON:  So, did you say May 24th?
24          THE COURT:  Yeah.
25          MR. VIGLIONE:  We'll go longer if they want.
26          THE COURT:  Okay.
27          ATTY. WILSON:  And I just -- okay.  And I -- I
```

15

```
 1          just wanted to back up on one thing.  If we -- if
 2          there -- if -- if your Honor could enter an order
 3          just regard -- to elaborate on Judge Klau's order
 4          that -- that Mr. Viglione be required to respond to
 5          the Talking Parents app.  My client writes to him and
 6          he does not respond, and then I reach out to him and
 7          then he threatens me with the police.
 8              THE COURT:  So --
 9              ATTY. WILSON:  His -- Judge Klau's order did not
10          say, you know -- in my agreement proposal I say that
11          each party must within 48 hours respond.
12              THE COURT:  Yeah.  So, you're right.  So, what
13          it does is this; this is what was ordered.  That Mr.
14          Viglione shall sign up for the Talking Parents app by
15          noon on April 5th.  He's testified that he signed up.
16          He didn't tell me the time or the day, but he signed
17          up.  And the parties shall exchange e-mail addresses.
18          And paragraph 2 is regarding -- oh.  The app will be
19          used to communicate among the parties in regards to
20          the minor child in all cases except in emergencies.
21          So, there isn't anything for me to add.  He's already
22          ordered that regarding Julianna, the parties are to
23          communicate so.
24              ATTY. WILSON:  Do you interpret that to mean
25          that he needs to respond?
26              THE COURT:  Yeah.  They have to communicate
27          about the children.
```

16

```
 1            MR. VIGLIONE:  So, the -- so --

 2            THE COURT:  Unless it's an emergency.

 3            MR. VIGLIONE:  -- so, her asking me to take her

 4       to dance and church, which I've been doing since

 5       December of 2016 --

 6            THE COURT:  Yeah.

 7            MR. VIGLIONE:  -- I have to keep responding on a

 8       Monday, even though I dropped her off on Sunday?  I

 9       have to respond to her and let her know.  Right?

10            THE COURT:  Well --

11            MR. VIGLIONE:  'Cause it's repetitive.

12            THE COURT:  -- you know, the -- the --

13            MR. VIGLIONE:  It's repetitive and useless

14       information.

15            THE COURT:  And -- and it's harassing.  Right?

16       You feel like you're being harassed?

17            MR. VIGLIONE:  Yeah.  Well, I mean, I don't

18       wanna go there.

19            THE COURT:  So, I understand that, but the point

20       of communication -- which is why I suggested family

21       relations.  The point of communication is to be able

22       to exchange ideas or information about that.  I am

23       sure, Mr. Viglione, that if you come in with a list

24       of text messages where she's already telling you what

25       you need to do --

26            MR. VIGLIONE:  Repeatedly.

27            THE COURT:  -- that's -- then that's something
```

17

1        different.  The -- I -- there's -- first of all, I
2        can't clarify another Judge's order, number one.
3        But, number two, I don't see a need to clarify.  It
4        clearly states that the parties are to communicate
5        about Julianna through that app unless it's an
6        emergency, and then in that event, through your
7        mother.  So, there isn't a motion for contempt before
8        me.  I -- you know, I think Judge Klau would be happy
9        to elaborate on his own order, but you'd have to file
10       that motion.
11            ATTY. WILSON:  Okay.  And, your Honor, the only
12       -- I -- I -- I understand where you're going with
13       this.  The only thing that I'm hoping to resolve at
14       this point is this weekend regarding Mother's Day.
15            THE COURT:  Okay.
16            ATTY. WILSON:  If we refer to the order of
17       December 16th -- I'm sorry, December of 2016, that --
18            THE COURT:  Yes.
19            ATTY. WILSON:  -- that refers to it.  So, the --
20       the --
21            THE COURT:  The minor child shall spend Mother's
22       Day with the mother.
23            MR. VIGLIONE:  Mm-hmm.
24            THE COURT:  Period.
25            ATYT. WILSON:  Right.  Correct.  And so the --
26       the communication that my client has made to Mr.
27       Viglione regarding this weekend, to which he has

18

```
1        responded, I think, briefly and very angrily, was --
2            THE COURT:  So he does respond?
3            ATTY. WILSON:  Well, after -- well --
4            MS. ANTAR:  I messaged him -- can I --
5            ATTY. WILSON:  When I -- I was advised that he
6        did not respond, and then --
7            THE COURT:  Oh.
8            ATTY. WILSON:  -- when I saw him -- when I later
9        saw it, he did finally respond --
10           THE COURT:  Oh, I see.  Okay.
11           ATTY. WILSON:  -- with -- with, you know,
12       something like I'm not gonna deal with this.
13           THE COURT:  So, Mother's Day is Sunday.
14           ATTY. WILSON:  So, mother -- so -- so, right
15       now, Mr. Viglione has the child from 6 p.m. on Friday
16       --
17           THE COURT:  Yep.
18           ATTY. WILSON:  -- to 6 p.m. on Sunday.
19           THE COURT:  Okay.
20           ATTY. WILSON:  So, my client reached out to him
21       through the Talking Parents app and asked two things.
22           THE COURT:  Yep.
23           ATTY. WILSON:  Can she have Julianna at 10 a.m.
24       on Mother's day.
25           THE COURT:  Okay.
26           MR. VIGLIONE:  Which it's in black and white.
27       Why wouldn't she have her on Mother's Day?
```

19

```
 1            ATTY. WILSON:  Well, it's not in black and white
 2       what time.
 3            THE COURT:  Okay.  So, what time --
 4            MR. VIGLIONE:  At church.
 5            THE COURT:  So, you want ten to six?
 6            MR. VIGLIONE:  At church.  It's already been --
 7            ATTY. WILSON:  No.
 8            MS. ANTAR:  No.
 9            ATTY. WILSON:  So, ten -- from -- so -- so,
10       right.  She normally goes back to mom at 6 p.m. on
11       Sunday.  We're asking that she --
12            THE COURT:  To mom or to dad?
13            ATTY. WILSON:  To -- to --
14            THE COURT:  Oh, she goes back to mom at six.
15            ATTY. WILSON:  Exactly.  So, on Mother's Day,
16       we're asking that he drop her off at church at 10
17       a.m. and that's the end of it.  And on Saturday --
18       so, mom has sole legal custody, and one of those
19       things -- she has dance.
20            Can you tell the Judge what's going on on
21       Saturday?
22            MS. ANTAR:  Yes.  So, her dance recital is next
23       Saturday, and this Saturday they have an award
24       ceremony and they're also going to do a pizza party
25       and my daughter is receiving an award.  So, I -- I
26       simply reached out to him; I asked please confirm
27       that you can bring her on Saturday at 4 p.m. for the
```

20

```
1        award ceremony; she's getting an award and the
2        teacher asked that we RSVP.  And also please confirm
3        that you can bring her to church on Sunday at ten and
4        drop her there and she'll stay with me for the rest
5        of the day.  Three days went by, he didn't respond at
6        all.  Then he finally responds and says, oh, this is
7        ridiculous, why do I have to bring her to this, I --
8        I don't care, and getting very --
9            MR. VIGLIONE:  Not I don't care.
10           MS. ANTAR:  -- getting very angry.  And I said
11       -- I said there's only two dance things left and then
12       dance is done for the whole year until September.
13       All I --
14           THE COURT:  So, what are you -- what are you
15       asking?
16           MS. ANTAR:  I asked him to please confirm that
17       he can bring her to those.  He ignored me again.
18           ATTY. WILSON:  So, we're --
19           MS. ANTAR:  So, I --
20           THE COURT:  Okay.  So, hold on one second.  Let
21       me -- so, first of all, let's start with Mother's Day
22       because that's easy.
23           MS. ANTAR:  Yeah.
24           THE COURT:  The minor child shall spend Mother's
25       Day with the mother.  So, sir, can you drop her off
26       at church at ten on --
27           MR. VIGLIONE:  Yeah, that was -- that --
```

21

```
 1        that's --
 2             THE COURT:  Okay.  All right.  So, that solves
 3        that problem.  Now, tell me -- tell me, from your
 4        perspective --
 5             MR. VIGLIONE:  All right.
 6             THE COURT:  -- I've heard from Miss Antar --
 7             MR. VIGLIONE:  This is what it is.
 8             THE COURT:  -- tell me about Saturday.
 9             MR. VIGLIONE:  Her -- she has dance --
10             THE COURT:  Yes.
11             MR. VIGLIONE:  -- which I wouldn't stop her from
12        doing dance if it was --
13             THE COURT:  Yeah.
14             MR. VIGLIONE:  -- dance, baseball, whatever it
15        was.
16             THE COURT:  Yeah.
17             MR. VIGLIONE:  And if she has a ceremony -- if
18        she has a ceremony or something to with that, why
19        wouldn't I take her?  My argument was that --
20             THE COURT:  Stop -- stop sending me messages
21        about it.
22             MR. VIGLIONE:  Well, wasn't even -- it wasn't
23        even that.  It's not even that.  It's the fact of the
24        matter of I have her from Friday at six --
25             THE COURT:  At night.
26             MR. VIGLIONE:  -- to Sunday at six.  Now, I have
27        all these activities that I have to bring her to
```

22

```
 1          dance, now recital, whatever.  You know, that's --
 2              THE COURT:  Okay.
 3              MR. VIGLIONE:  -- understandable.  And now
 4      Mother's Day, which is fine because it's Mother's
 5      Day.
 6              THE COURT:  Yeah.  Do you have her every
 7      weekend?
 8              MR. VIGLIONE:  Every weekend.
 9              THE COURT:  Okay.  So, how about this.  He --
10      you don't have a problem with her going to her dance
11      award ceremony.
12              MR. VIGLIONE:  No.  And church too, you know
13      what I mean.  But it's --
14              THE COURT:  Okay.
15              MR. VIGLIONE:  -- when they start adding extra
16      things, it's taking more time out of --
17              THE COURT:  So, what about --
18              MR. VIGLIONE:  -- my time.
19              THE COURT:  -- the following Saturday.  Is dance
20      gonna be over after the recital?
21              MS. ANTAR:  Yes.  And then it doesn't start up
22      again until September.  And I explained that in the
23      app.  I said, you know, you have all summer.
24              THE COURT:  When is -- when is dance over?
25      When's the recital?
26              MS. ANTAR:  May 18th which is next Saturday.
27              THE COURT:  Okay.  So, then on May 25th,
```

23

```
 1          Memorial Day weekend, don't plan anything and you get
 2          to decide what you're gonna do with her for Memorial
 3          Day weekend.
 4               MR. VIGLIONE:  Exactly.
 5               THE COURT:  You wanna do that?
 6               MR. VIGLIONE:  No, yeah.  I -- I agree that -- I
 7          agree to all of that.
 8               THE COURT:  Okay.  Actually --
 9               MR. VIGLIONE:  That's not what I'm disagreeing
10          to.  What -- it's -- what I'm disagreeing to is all
11          of the additive things that -- that gets added.
12               THE COURT:  Yeah.
13               MR. VIGLIONE:  You know what I mean?  It's --
14               THE COURT:  All right.  So, does that -- does
15          that make sense to you?  I don't see --
16               MR. VIGLIONE:  Yes, that's fine.  That's good.
17               THE COURT:  -- I don't see Memorial Day
18          weekend --
19               MR. VIGLIONE:  No, that's fine.
20               THE COURT:  -- in the order, so I'll order the
21          following:  By agreement of the parties, Mr. Viglione
22          doesn't object, so for this weekend, May 17th, dad
23          will have Julianna --
24               MR. VIGLIONE:  11th she'll be at dance and 18th
25          she'll be at her recital.
26               THE COURT:  I'm sorry.  This is not the 16th.
27          May 10th.  You'll have her at six.
```

24

```
 1              MR. VIGLIONE:  Mm-hmm.
 2              THE COURT:  You will drop her off at her award
 3         ceremony for dance --
 4              MR. VIGLIONE:  Dance and then recital.
 5              THE COURT:  -- and the pizza party.
 6              MR. VIGLIONE:  Yeah.
 7              THE COURT:  Dad will get her back -- or however
 8         that transportation happens -- after that.
 9              MR. VIGLIONE:  Mm-hmm.
10              THE COURT:  Then on Sunday, dad agrees he'll
11         drop her off at church at 10 a.m. and the child will
12         stay with mom.  Now, there was some issue at 6
13         o'clock.  Right?
14              ATTY. WILSON:  No, no.  It's fine.  She's --
15         he's just gonna drop her off at 10 a.m. and that's
16         it.
17              THE COURT:  Okay.
18              ATTY. WILSON:  But the only issue is the next
19         weekend when there's a dress rehearsal and the
20         recital.
21              MS. ANTAR:  Yes.
22              THE COURT:  Right.  I'm talking about not the
23         next weekend, I'm talking about the 25th, because the
24         recital is over next weekend.
25              ATTY. WILSON:  So, we just wanted to --
26              THE COURT:  Dance is over.
27              MS. ANTAR:  Yes.
```

25

```
1          ATTY. WILSON:  -- we wanted to have orders that
2     said that she was gonna go to the pizza party on the
3     11th.
4          THE COURT:  I've already done that.
5          ATTY. WILSON:  Mother's Day on the 12th.
6          THE COURT:  I've already done that.
7          ATTY. WILSON:  And then on the 17th and 18th, go
8     ahead.
9          MS. ANTAR:  Correct.  So, your Honor, just to
10    clarify, the only reason I reach out to him is if
11    it's something out of the ordinary.  Like, for
12    example, the recital --
13         THE COURT:  Ma'am, you don't have to explain
14    this to me.  There's already an order in place that
15    says you are to talk to dad through this app.
16         MS. ANTAR:  But when he doesn't --
17         THE COURT:  So, what's supposed to be happening
18    is not what's happening now.  You two are supposed to
19    be able to do this.  I understand for lots of reasons
20    it's not happening.  But, it's after 1 o'clock, so I
21    needed to stop at 1 o'clock.  All I'm trying to
22    figure out is that -- in other words, the problem is
23    that you two don't communicate well, because he's not
24    disagreeing.  Right?  He -- he -- he's not
25    disagreeing.  He will drop her off at church; he will
26    drop her off at -- at dance.  His issue is something
27    different, which is why I recommended family
```

26

```
 1          relations.  But I'm not -- I don't want to waste your
 2          time.  I just want to try to get you through whatever
 3          weekend.  What I was trying to do was make up for the
 4          pizza party and the award ceremony that dad -- so,
 5          dad basically doesn't have his weekend, which he gets
 6          'cause it's Mother's Day on Sunday; he's not arguing
 7          that.  But, so, basically, he's gonna have her for
 8          dinner Friday night, right, over -- overnight.
 9              MR. VIGLIONE:  No, everything is all situated.
10          Everything is all set.
11              THE COURT:  Yeah.  So, what I was trying to
12          do --
13              MR. VIGLIONE:  The next --
14              THE COURT:  -- was give you time --
15              MR. VIGLIONE:  This week --
16              THE COURT:  -- after dance is over.
17              MR. VIGLIONE:  -- this week and next week's all
18          set.  It's when we come back to court again is when
19          all the brass tax is gonna come out.
20              THE COURT:  Right.  So, you -- so, I don't need
21          to do anything about the 25th?
22              MR. VIGLIONE:  So, when's our next court date is
23          what we're waiting for?
24              ATTY. WILSON:  The seven -- are we clear that
25          she's going to the recital on the 17th and --
26              THE COURT:  I've already ordered that, counsel.
27              MR. VIGLIONE:  Yes.  Everything is all set.
```

27

```
 1              THE COURT:  What I'm -- what I'm working on is
 2        the 25th, Memorial Day weekend.
 3              MS. ANTAR:  Right.  After the 18th, he can do
 4        whatever he wants every weekend for the whole summer
 5        because there's no more dance.
 6              THE COURT:  Because she doesn't have dance, she
 7        doesn't --
 8              MS. ANTAR:  And no more Sunday school after the
 9        19th.
10              THE COURT:  Got it.
11              MS. ANTAR:  But my -- my only thing I wanna say
12        was about the 17th.  She has her dress rehearsal
13        which has to be in full costume, and that's gonna be
14        at 4 p.m. on the 17th.  They do a full dress
15        rehearsal, and then the 18th is the recital.  So I
16        just wanna make sure that he's gonna bring her to
17        that dress rehearsal and then --
18              THE COURT:  Is this the first he's hearing about
19        this, today?
20              MR. VIGLIONE:  Yes.  4 p.m. on the 17th?
21              MS. ANTAR:  I tried to message him -- I tried to
22        message him on the app and he ignores me.  So, if he
23        would just communicate on the app, it would be a lot
24        easier --
25              THE COURT:  Yeah.
26              MS. ANTAR:  -- 'cause I can I can just tell him,
27        hey, this is the date, this is the time --
```

28

```
 1            THE COURT:  Yeah.
 2            MS. ANTAR:  -- and we can -- we can both do
 3       what's in our best interest for our daughter.  Which
 4       is all I'm trying to do is what's in her best
 5       interest.
 6            THE COURT:  Okay.
 7            MS. ANTAR:  She enjoys dance.  I really wanna
 8       make sure that she's a part of her event.
 9            THE COURT:  So, Mr. Viglione, it sounds like
10       this is the last bit of dance.
11            MR. VIGLIONE:  Yeah.
12            MS. ANTAR:  For the year.
13            THE COURT:  And if she has a recital, they put
14       them all in their costumes and send them.
15            MR. VIGLIONE:  Yeah.  So, all right.  So, I
16       didn't -- I just heard about this, so --
17            THE COURT:  Okay.
18            MR. VIGLIONE:  -- I'll leave work even earlier
19       on the 17th to pick her up at four?  Or even earlier
20       to bring her.
21            THE COURT:  No, she's gotta be there -- I think
22       she's gotta be there --
23            MS. ANTAR:  Yeah.  I can -- I can e-mail you the
24       information and I'll message you all the details, but
25       all I wanna know is you can just please bring her to
26       dress rehearsal on the 17th.  Make sure she's at the
27       recital on time so we can get her ready before the
```

29

```
 1        recital.
 2            THE COURT:  Well, wait a minute.  Why -- does he
 3        have her at that time?  Don't you have her?
 4            MR. VIGLIONE:  No.  6 o'clock I'm supposed to
 5        get her on Friday.
 6            THE COURT:  Yeah.  So, why would he be bringing
 7        her at four.  I don't understand.
 8            MR. VIGLIONE:  Because it's only for her best
 9        interest.
10            MS. ANTAR:  It's an hour out of the time that --
11        you usually pick her up at five.  You usually get
12        there early.  So, I'm just saying, if he can do that,
13        that would -- by the time the rehearsal starts, it's
14        gonna cut into his time, so this is why I'm asking if
15        he can bring her.
16            THE COURT:  But isn't she with you or at school
17        or wherever she is at that time?
18            MS. ANTAR:  She'll be at school, yes.
19            ATTY. WILSON:  And she'll be at work.
20            MS. ANTAR:  And I'll be at work.  And --
21            THE COURT:  Right.  But dad would normally --
22        let's pretend there was no dress rehearsal.  Dad
23        wouldn't get her till six.  Right?
24            MS. ANTAR:  Right.  But the rehearsal starts at
25        four, and it's gonna be continuing on through --
26        through six.
27            THE COURT:  Right.  So, what I'm saying is --
```

30

```
 1            MS. ANTAR:  So, during that time --

 2            THE COURT:  -- why is it that you aren't getting

 3      her to the rehearsal and then dad gets her after the

 4      rehearsal or comes to the rehearsal?

 5            MS. ANTAR:  Because --

 6            THE COURT:  Do you understand what I'm saying?

 7            MS. ANTAR:  -- I'm gonna be at work, so that's

 8      why I'm asking if he's able to do that.

 9            MR. VIGLIONE:  Listen, I will do it.

10            MS. ANTAR:  It cuts into his time.

11            MR. VIGLIONE:  Just to get this done, I will

12      agree to that.  All right.  It will be done.

13            THE COURT:  What are you agreeing to?  To take

14      her to the rehearsal?

15            MR. VIGLIONE:  On Friday -- on Friday the 17th,

16      I will be at her school at 3 o'clock to make sure

17      she's at her recital or dress --

18            THE COURT:  Okay.

19            MR. VIGLIONE:  -- rehearsal thing by four.

20            THE COURT:  All right.

21            MR. VIGLIONE:  Whatever.

22            THE COURT:  So ordered.  He's agreeing.

23            MR. VIGLIONE:  Okay.  Yeah.  And --

24            MS. ANTAR:  And the 18th he'll bring her --

25            THE COURT:  Okay.  So what date are we coming

26      back?

27            MR. VIGLIONE:  So, next court date.
```

31

```
1              THE COURT:  Are coming back on the 24th?

2              ATTY. WILSON:  Your Honor, let me check --

3              MR. VIGLIONE:  No, we're gonna do --

4              THE COURT:  Oh, right.  You wanted it later.

5         You want it in June?  End of June?

6              MS. ANTAR:  End of June.

7              THE COURT:  End of June.  Is there a particular

8         day of the week that's better for you, Mr. Viglione?

9              MR. VIGLIONE:  I don't care.

10             THE COURT:  Okay.  Attorney Wilson?

11             ATTY. WILSON:  Is -- I'm trying to --

12             THE COURT:  The week of June 24th?

13             ATTY. WILSON:  Oh, I've got a --

14             THE COURT:  Or the week of June 17th?

15             ATTY. WILSON:  -- vicious trial in Norwich all

16        week.

17             THE COURT:  Okay.

18             ATTY. WILSON:  How about June 21st?

19             MR. VIGLIONE:  Oh, my God.  Ridiculous.

20             THE COURT:  I'm sorry?

21             ATTY. WILSON:  June 21st is a Friday.

22             THE COURT:  Okay.  June 21st 9:30 or 10 o'clock.

23             MR. VIGLIONE:  Sounds -- sounds good to me, your

24        Honor.

25             THE COURT:  Friday, June 21st, 10 a.m. for

26        whatever issues remain.  Okay.

27             ATTY. WILSON:  Okay.
```

32

```
 1          THE COURT:  And you'll get -- I'll -- I'll make

 2    sure this gets written up in an order and you'll get

 3    the order of what everybody's agreed to.

 4          ATTY. WILSON:  Thank you, your Honor.  My client

 5    was saying and if -- even if he doesn't have a

 6    lawyer, we're still gonna proceed at that point.

 7          THE COURT:  Yes.  Mr. Viglione is clear.

 8          MR. VIGLIONE:  Yes.

 9          THE COURT:  He won't be able to come and tell

10    me, oh, I need a -- 'cause we talked about that

11    today.

12          MR. VIGLIONE:  Yep.  I hear you.

13          THE COURT:  Okay.  All right.  Very good.  We're

14    all set.  Thank you, staff.

15          ATTY. WILSON:  Thank you, your Honor.

16

17

18

19

20

21

22

23

24

25

26

27
```

```
NNH-FA16-4068691-S          :   SUPERIOR COURT

THEODORA ANTAR             :   JUDICIAL DISTRICT OF NEW HAVEN

v.                         :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE            :   MAY 10, 2019
```

C E R T I F I C A T I O N

    I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, New Haven, Connecticut, before the Honorable Erika Tindill, Judge, on the 10th day of May, 2019.

    Dated this **21st** day of May, 2024 in New Haven, Connecticut.

_____
Shannon Anderson
Court Recording Monitor

```
NNH-FA16-4068691-S        :   SUPERIOR COURT

THEODORA ANTAR           :   JUDICIAL DISTRICT OF NEW HAVEN

v.                       :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE          :   MAY 10, 2019




                    E L E C T R O N I C

                  C E R T I F I C A T I O N




        I hereby certify the electronic version is a true and

correct transcription of the audio recording of the above-

referenced case, heard in Superior Court, Judicial District of

New Haven, New Haven, Connecticut, before the Honorable Erika

Tindill, Judge, on the 10th day of May, 2019.




        Dated this 21st day of May, 2024 in New Haven,

Connecticut.


                              Shannon Anderson
                              _____
                              Shannon Anderson
                              Court Recording Monitor
```

On 6/28/19, we had another hearing. The transcript is below:

```
NNH-FA16-4068691-S          :   SUPERIOR COURT

THEODORA ANTAR              :   JUDICIAL DISTRICT OF NEW HAVEN

v.                         :   AT NEW HAVEN, CONNECTICUT

GERALD VIGLIONE            :   JUNE 28, 2019



                    TRANSCRIPT OF PROCEEDINGS



             BEFORE THE HONORABLE DANIEL KLAU, JUDGE


A P P E A R A N C E S :


      Representing the Plaintiff:

           ATTORNEY JESSICA WILSON
           157 Church Street
           19th Floor
           New Haven, Connecticut 06510

      Representing the Defendant:

           MR. GERALD VIGLIONE
           Self-Represented Party
```

```
                              Recorded and Transcribed By:
                              Shannon Anderson
                              Court Recording Monitor
                              235 Church Street
                              New Haven, Connecticut 06510
```

1

```
 1              THE COURT:  All right.  Antar versus Viglione.
 2              ATTY. WILSON:  Good morning, your Honor.  How
 3         are you?
 4              THE COURT:  Good.
 5              ATTY. WILSON:  Okay.  So, after lots of
 6         discussions, we have --
 7              THE COURT:  Wait a second.  Would you just
 8         identify yourself --
 9              ATTY. WILSON:  Oh, I'm sorry.  Attorney --
10              THE COURT:  -- for the record.  Go ahead.
11              ATTY. WILSON:  -- Attorney Jessica Wilson for
12         the --
13              THE COURT:  Yep.
14              ATTY. WILSON:  -- plaintiff Theodora Antar who's
15         present and to my left.
16              THE COURT:  Thank you.  And good afternoon,
17         ma'am.
18              Good afternoon, sir.
19              Madam clerk, would you swear the parties in
20         please.
21              THE CLERK:  Please raise your right hands.  Do
22         you solemnly swear or solemnly and sincerely affirm
23         as the case may be that the evidence you shall give
24         concerning this case shall be the truth, the whole
25         truth, and nothing but the truth, so help you God or
26         upon penalty of perjury?
27              MR. VIGLIONE:  Yes.
```

2

```
 1           MS. ANTAR:  Yes.
 2           MR. VIGLIONE:  I do.
 3           THE COURT:  One at a time, please state your
 4      name and address for the record.
 5           MS. ANTAR:  Theodora Antar, 856 Shagbark Drive,
 6      Orange, Connecticut, 06477.
 7           THE CLERK:  Thank you, ma'am.
 8           MR. VIGLIONE:  Gerald Viglione, 118 Irvington,
 9      New Haven, Connecticut, 06513.
10           THE CLERK:  Thank you.  Please be seated.
11           THE COURT:  All right.  Go ahead, counsel.
12           ATTY. WILSON:  So, your Honor, the -- the
13      parties have entered an agreement on plaintiff's
14      motion to modify.  We've been here a couple of times.
15      We were here last with Judge Tindill. We thought we
16      might have to proceed --
17           THE COURT:  Right.
18           ATTY. WILSON:  -- with a hearing, but luckily we
19      have come to a very comprehensive agreement,
20      everything is signed, and we -- and we're requesting
21      that it be made an order of the Court.
22           THE COURT:  All righty.  Would you canvass your
23      client, Attorney Wilson.
24           ATTY. WILSON:  Yes.
25           THE COURT:  Thank you.
26           ATTY. WILSON:  Do you want her to go up there,
27      or just here?
```

3

```
 1          THE COURT:  No, you can do it right from there,
 2          But, sir, let me ask you.  So, listen very
 3    carefully to the questions counsel asks about --
 4    about the agreement.  I'm not gonna repeat them to
 5    you.
 6          MR. VIGLIONE:  All right.
 7          THE COURT:  But once they're done, I'm gonna ask
 8    whether you listened and heard them --
 9          MR. VIGLIONE:  Yep.
10          THE COURT:  -- and agreed with the answers.
11    Okay.
12          MR. VIGLIONE:  Yep.
13          THE COURT:  All right.  Go ahead, counsel.
14          ATTY. WILSON:  Okay.  So, Miss Antar, do you
15    recognize this document?
16          MS. ANTAR:  Yes.
17          ATTY. WILSON:  Did you -- is this your signature
18    on the bottom of all four pages?
19          MS. ANTAR:  Yes.
20          ATTY. WILSON:  Okay.  And how many provisions
21    are there in this agreement?
22          MS. ANTAR:  20.
23          ATTY. WILSON:  Okay.  So, we're gonna go through
24    each of these and make sure that you're in agreement.
25    So, it says the mother shall have sole legal and
26    physical custody of the minor child.
27          The father shall have parenting time with the
```

4

1     child every weekend from Friday from 6 p.m. -- I'm

2     sorry, Friday at 6 p.m. to Sunday at 6 p.m.  The

3     father shall pick up the child on or before 6 p.m. on

4     Friday at her school or afterschool program.  The

5     father shall drop off the child at the mother's

6     residence, your current address, which is the one in

7     Orange.  If the child does not have school on a

8     Friday, the mother shall arrange for childcare during

9     the day, and father shall pick up the child from the

10    mother's residence at 6 p.m.

11         If the father requests time off from parenting

12    the child on a weekend for an event or work, he shall

13    notify you within 48 -- within 48 hours -- I'm sorry,

14    48 hours in advance, and said time shall be made up

15    with a midweek dinner between father and child with

16    drop-off at eight.  Is this -- is this your

17    understanding?

18         MS. ANTAR:  Yes.

19         ATTY. WILSON:  Okay.  And on the second page, if

20    father misses three weekends in a row, the father's

21    parenting time shall change to parenting time at the

22    mother's sole discretion.

23         Regarding the right of first refusal, if the

24    father is unable to parent the child for a period in

25    excess of two hours during his parenting time, the

26    father shall first ask the mother if she can parent

27    the child before allowing anyone else to watch the

5

```
1        child, with the exception of the paternal grandmother
2        and paternal grandfather who can watch the child for
3        up to two hours.  The mother must first approve of
4        any individual other than the paternal grandparents
5        watching the child for any amount of time.  Do you
6        understand that?
7             MS. ANTAR:  Yes.
8             ATTY. WILSON:  When the child is with her
9        father, the mother shall have one phone call each
10       night with the child to say goodnight.  The father
11       shall ensure that said call is answered or
12       immediately returned upon receipt of a voicemail
13       message from mother.  If the child wants subsequent
14       calls, the father shall facilitate said calls.  If
15       the child expresses a want to speak with her father
16       when not in his care, the mother shall facilitate
17       said calls.  Do you understand that?
18            MS. ANTAR:  Yes.
19            ATTY. WILSON:  Absent an emergency, all
20       communication between mother and father shall be via
21       the Talking Parents app.  Communications shall be
22       limited to those concerning the child.
23       Communications shall be responded to within 48 hours
24       of receipt.
25            In case of emergency, illness, injury, and the
26       like, the parents shall immediately and directly
27       contact each other via telephone call or text
```

6

```
1          message.  Do you understand that?
2              MS. ANTAR:  Yes.
3              ATTY. WILSON:  The father shall take the -- the
4      father shall take the child to all religious,
5      educational, sporting, extracurricular, and social
6      activities including, but not limited to, church,
7      Sunday school, dance, and birthday parties in which
8      the child is involved.
9              The father shall take the child to all medical
10     appointments that occur during his parenting time.
11             If the mother has an activity with the child on
12     the weekend, she shall notify the father 48 hours in
13     advance and she shall be able to take the child to
14     said activities if desired by father.  Said times
15     shall be made up with a midweek dinner between father
16     and child from after school until 8 p.m. drop-off at
17     mother's residence.
18             Both parents shall be entitled to two non-
19     consecutive vacation weeks, that means not in a row,
20     seven nights, each year.  The parents shall give each
21     other 30 days' notice of said vacations.  Further
22     shall provide a general itinerary including, but not
23     limited to, hotel and travel accommodations.  If the
24     father intends to take the child out of the state of
25     Connecticut for said vacations or a day trip, he
26     shall notify the mother.
27             Regarding Greek-Orthodox Easter, the child shall
```

7

```
1        be with the mother on Holy Friday, Holy Saturday, and
2        Greek-Orthodox Easter Sunday.  The child shall be
3        with the father on Catholic Easter if it does not
4        fall on the same date as Greek-Orthodox Easter.  Do
5        you understand that and agree?
6             MS. ANTAR:  Yes.
7             ATTY. WILSON:  Mother's -- number 17, Mother's
8        Day and Father's Day.  The child shall be with the
9        mother from 10 a.m. on Mother's Day, drop-off at the
10       mother's residence.  The child shall be with the
11       father on Father's Day until 8 p.m., drop-off to
12       occur at the mother's residence.
13            Christmas.  In odd years, the child shall be
14       with the father from 8 a.m. on Christmas Eve until 6
15       p.m.  Church with mother from 6:00 to 8:30 p.m.  And
16       then from 8:30 p.m. overnight until 10 a.m. on
17       Christmas morning, drop-off at the mother's
18       residence.  In even years, the father shall be with
19       the child from 8 a.m. on Christmas Eve until 6 p.m.,
20       drop-off at church.  The child shall be with the
21       father from 2 p.m. on Christmas afternoon until 10
22       a.m. on December 26th, drop-off at the mother's
23       residence.
24            Thanksgiving.  The child shall be with the
25       father from 2 p.m. to 8 p.m., drop-off at the
26       mother's residence.
27            Halloween and Fourth of July, the mother and
```

8

```
 1          father shall each have at least two hours of time
 2          with the child on said holidays.
 3               Note, this agreement has four pages and 20
 4          provisions.
 5               Do you -- did you read and understand all of
 6          these provisions?
 7               MS. ANTAR:  Yes.
 8               ATTY. WILSON:  Do you agree to them?
 9               MS. ANTAR:  Yes.
10               ATTY. WILSON:  Did -- do you have a question
11          about any of them?
12               MS. ANTAR:  No.
13               ATTY. WILSON:  Was it just this one?
14               MS. ANTAR:  No, yeah, no, I'm good.
15               ATTY. WILSON:  Your Honor, for the record,
16          regarding Christmas, we -- the child shall be with
17          the father from 2 p.m. on -- I'm sorry.  The child
18          shall be with the father from 2 p.m. on Christmas
19          afternoon.  We -- we meant morning, but it was
20          technically afternoon, but we meant morning, but
21          it --
22               THE COURT:  That's good.  Gotcha.
23               ATTY. WILSON:  Okay.
24               THE COURT:  Yeah.
25               ATTY. WILSON:  And is -- did you sign this of
26          your own free will?
27               MS. ANTAR:  Yes.
```

9

```
 1              ATTY. WILSON:  Did anybody force you to sign
 2       this?
 3              MS. ANTAR:  No.
 4              ATTY. WILSON:  Are you under any sort of duress
 5       when you were signing this?
 6              MS. ANTAR:  No.
 7              ATTY. WILSON:  Did you receive counsel from your
 8       attorney?
 9              MS. ANTAR:  Yes.
10              ATTY. WILSON:  Are you satisfied with my
11       representation?
12              MS. ANTAR:  Yes.
13              ATTY. WILSON:  Would you like the Court to make
14       this an order?
15              MS. ANTAR:  Yes.
16              ATTY. WILSON:  Thank you.
17              THE COURT:  All right.  Thank you very much,
18       counsel.
19              All right.  Sir, did you hear each of the
20       questions that counsel asked Miss Antar?
21              MR. VIGLIONE:  Yes, I did.
22              THE COURT:  And did you hear her answers?
23              MR. VIGLIONE:  Yes, I did.
24              THE COURT:  And do you agree with her answers?
25              MR. VIGLIONE:  Yes, I do.
26              THE COURT:  So if I asked you the same set of
27       questions, would you have answered the same way?
```

10

```
 1              MR. VIGLIONE:  Yes, I will.
 2              THE COURT:  I have the original of this
 3         agreement in front of me.  Do you have a copy of it?
 4              MR. VIGLIONE:  Oh, yeah, yeah, yeah, yeah.
 5              ATTY. WILSON:  The -- the one from today?
 6              THE COURT:  From today.
 7              ATTY. WILSON:  From today.
 8              THE COURT:  From today.
 9              MR. VIGLIONE:  Oh, oh, okay.  Yeah.
10              THE COURT:  Okay.
11              MR. VIGLIONE:  No, I don't have that one, do I?
12         This one?
13              ATTY. WILSON:  It's this one.
14              MR. VIGLIONE:  Oh, yeah. This that we just
15         wrote, yeah.
16              THE COURT:  Yeah.  Is that -- does that -- is
17         that a copy that includes the signatures?
18              MR. VIGLIONE:  Yes, it does.
19              THE COURT:  All right.  And on each -- on the
20         bottom of each page are signature blocks.  Correct?
21              MR. VIGLIONE:  Yes.
22              THE COURT:  And did you sign each of those?
23              MR. VIGLIONE:  Yes, I did.
24              THE COURT:  And did you do so voluntarily and of
25         your own free will?
26              MR. VIGLIONE:  Yes, I did.
27              THE COURT:  All right.  Do you have --
```

11

```
 1          understand that instead of entering into this
 2          agreement today, you were entitled to a hearing and a
 3          Judge would have heard the evidence and then decided
 4          the issues that are the subject matter of the
 5          agreement?
 6              MR. VIGLIONE:  Yes, I do.
 7              THE COURT:  By entering into this agreement, you
 8          understand you're waiving your right to have a Judge
 9          decide these issues?
10              MR. VIGLIONE:  Yes, I do.
11              THE COURT:  Is it the intention -- is it the
12          parties' intention, counsel, that -- is this a final
13          agreement or --
14              ATTY. WILSON:  It is, your Honor.
15              THE COURT:  What is it -- what specific --
16              ATTY. WILSON:  Was it in relation to?
17              THE COURT:  Right.
18              ATTY. WILSON:  It was -- so, it was --
19              THE COURT:  Is it 134, motion for modification?
20              ATTY. WILSON:  I -- I -- I don't have it right
21          in front of me.  It's -- it's a paper file.
22              THE COURT:  Right.
23              ATTY. WILSON:  It's -- so, it's -- it was
24          plaintiff's motion to modify.  And this -- this
25          should -- we are asking this to be a final agreement,
26          obviously subject to modification if necessary.
27              THE COURT:  Yes, yes.  That's all I meant.
```

12

```
1      Yeah.
2          ATTY. WILSON:  Yes.
3          THE COURT:  But it's --
4          ATTY. WILSON:  We ask this be a final agreement.
5          THE COURT:  All right.  Very good.  The Court is
6      happy to accept this agreement, finding it fair,
7      just, and equitable and in the best interest of the
8      minor children [sic].  So, the Court will approve and
9      adopt this as a final order that resolves the pending
10     motion for modification.  All right.
11         ATTY. WILSON:  Thank you, your Honor.
12         THE COURT:  Thank you all very much.  I'm very
13     glad that you were able to work this out.  It is a
14     comprehensive agreement.  Okay.
15         MS. ANTAR:  Thank you.
16         ATTY. WILSON:  Your Honor, just as a -- a
17     clerical question, because it's a paper file, so,
18     that -- I gave -- I -- I gave the clerk the original,
19     so --
20         THE COURT:  Yes.
21         ATTY. WILSON:  -- are you guys gonna file it?
22         THE COURT:  Yes.
23         ATTY. WILSON:  Okay.  So, I don't need to bring
24     it down to the --
25         THE COURT:  Right.
26         ATTY. WILSON:  -- office?  All right.  Thank you
27     so much, your Honor.
```

13

```
1          THE COURT:  You got it.  Thank you.
2          ATTY. WILSON:  Take care.
3          THE COURT:  Good day and good weekend.
4          ATTY. WILSON:  Thank you too.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
```